UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

FURMAN D. THOMAS,  NOT FOR PUBLICATION
 MEMORANDUM & ORDER

       Plaintiff,

  -against-  07-CV-0550 (CBA)

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
----------------------------------------------------------------X
AMON, United States District Judge:

    Plaintiff Furman D. Thomas brings this action pro se seeking review of an adverse decision by the Commissioner of Social Security denying her claim for benefits. The Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

    The administrative record was filed on July 18, 2007. Defendant served plaintiff with her motion for judgment on the pleadings on October 23, 2007, and plaintiff failed to respond. For the reasons stated herein, the defendant's motion for judgment on the pleadings is granted.

**I.    Background**

    Thomas was born on June 22, 1962. (R. 35, 169A.) She completed high school, but had no additional education or vocational training (R. 59-60, 169A.) She lives with her husband and son. (R. 169A.) In a Daily Activities Questionnaire dated May 15, 2004, she indicated that her typical day included waking up her son and dropping him off at school (R. 79-80), reading books and magazines (R. 81), watching television (R. 81), and sometimes spending two to three hours

1

cooking dinner.[1] (R. 79.) Additionally, the Questionnaire indicates that she shops for food with her husband (R. 81), drives a car (R. 80), and goes outside alone on a daily basis to attend doctor appointments and to take her son to school. Id. She also attends church between two and four times a week and sometimes receives visits from friends. (R. 82.)

Thomas worked as a senior accounting clerk for two law firms from January 2000 to January 2004. (R. 49, 56, 69.) Her primary responsibilities included computer data entry, communicating with vendors, answering telephones and training new employees. (R. 70-71.) Prior to that, from October 1980 to December 1999, Thomas held various jobs, working as an office clerk, a word processor, and an administrative assistant. Id. While doing these jobs, she would sit for up to eight hours per workday and was not required to do any lifting in excess of ten pounds. (R. 72-75.) At the time of the hearing, she had been employed for two months as a clerk in the accounts payable department of a real estate company, where she worked five hours per day, four days a week. (R. 169A-170.) In 2005, plaintiff earned about $14,000. (R. 47, 171.)

### A. Medical Evidence of Physical Ailments

In April 2003, Thomas reported that she experienced abdominal pain, nausea, and vomiting, and was examined by Dr. Leslie F. Seecoomar. (R. 98.) She claimed to have suffered from these symptoms since February 2003. Id. In the course of this examination, Dr. Seecomar performed an upper GI endoscopy, took biopsies and blood tests, and performed an abdominal ultrasound. Id. Based on the examination and the results of these tests, Dr. Seecoomar

---

[1] In a September 14, 2004 Disability Report appealing the decision against her, Thomas stated that her pain was so constant that she no longer engaged in any daily activity. (R. 92.)

concluded that Thomas' symptoms were primarily related to acid reflux disease. Id. The recommended course of treatment was a bland diet and avoidance of late night eating, as well as a prescription for Plavix, a medication to neutralize acid and bile. Id.

Thomas was also treated by Dr. William Gibbs for back pain. (R. 162-164.) On September 6, 2003, Dr. Gibbs administered a Caudal Epidural as treatment for Thomas' back pain, which had not been alleviated by narcotics or rest. (R. 162.) Dr. Gibbs later treated Thomas' back pain again by administering a right sacroiliac joint injection on February 14, 2004, noting that she had low back pain that had been aggravated by a recent fall. (R. 163.) Finally, Dr. Gibbs gave Thomas another injection for her back pain on May 4, 2004, this time in her bilateral sacroiliac joint. (R. 164.)

Dr. Gibbs also referred Thomas to Dr. Ezra Sharon (R. 165), who treated her for back and wrist pain between March 20, 2004 and May 8, 2004. (R. 96-97.) According to the transcribed medical report, Thomas' chief complaints were swelling of the wrist and a two-year history of fibromyalgia. Id. Dr. Sharon noted in his report that Thomas had been in a car accident in 1999, and prescribed Flexeril for her symptoms. Id. Because the Flexeril had not reduced the swelling in her wrist after 4 weeks, Dr. Sharon administered an injection of Depo Medrol and advised Thomas to use a wrist support. (R. 97.)

Thomas also had two Magnetic Resonance Imagings ("MRI") on June 7, 2004. (R. 160-161.) The first MRI was of the cervical spine and revealed protruded disc herniations posteriorly at the C4-5 and C5-6 discs. (R. 160.) There was also straightening of the normal cervical curve due to muscular spasm. Id. However, the spinal cord remained intact and there was no evidence of tonsillar herniation or other congenital anomalies. Id. The second MRI of

the lumbrosacral spine reveald diffuse bulging of the L4-5 and L5-S1 discs. (R. 162.) There was also straightening of the normal lumbar curve due to muscular spasm. Id. However, the thecal sac and nerve roots appeared patent and there was no evidence of central, lateral, or foraminal narrowing. Id.

In addition to her accident in 1999, a report from Jamaica Hospital Medical Center indicates that Thomas was involved in another motor vehicle accident on May 18, 2006. (R. 117-119.) Thomas was subsequently examined by Dr. Kyung Seo. (R. 128-129.) She complained of constant neck pain, headaches, and shoulder pain which radiated down both arms and caused a tingling sensation in both hands. (R. 128.) Dr. Seo concluded that Thomas' muscle aches slightly limited her ability to sit, stand, bend, lift, and carry heavy objects, but the overall prognosis was fair. (R. 129.)

On June 30, 2007, Thomas' record was reviewed by A. Thornton, a disability analyst, who noted that Thomas had complained of pain and an inability to sit or stand for long periods of time. (R. 151.) After examining the various medical reports, Thornton concluded that Thomas' statements were "credible, but not to the degree alleged." (R. 152.)

**B. Medical Evidence of Non-Physical Ailments**

In addition to her physical ailments, Thomas also suffers from psychological disorders. She was diagnosed with Generalized Anxiety Disorder ("GAD") by Dr. William Gralnick, a psychiatrist who treated her on four occasions between May and August of 2003. (R. 120-127.) Then, on April 22, 2004, Thomas' record was reviewed by Dr. J. Curly, Ph.D., who concluded that she suffered from depression and dystymia. (R. 132.) Dr. Curly also noted that while Thomas' capacity for sustained concentration, persistence, and adaptation were only moderately

4

limited, there was no significant limitation of her understanding, memory, or ability to interact socially. (R. 130-131.)

On May 24, 2004, Thomas underwent another psychiatric evaluation, this time by Dr. Herbert Meadow. (R. 114.) Like Drs. Gralnick and Curly, Dr. Herbert diagnosed Thomas with Dystymia and GAD. (R. 115.) Dr. Herbert recommended psychiatric treatment, and further noted that while Thomas does suffer from a psychiatric disorder, it would not necessarily interfere with her ability to function. Id.

### C. The Administrative History

Thomas applied for benefits on March 29, 2004.[2] (R. 35-37.) Her application for benefits was denied based on a finding that her condition was not severe enough to prevent her from performing her work as an accounts payable clerk. (R. 27.) She requested a hearing before an Administrative Law Judge ("ALJ"), which was held before ALJ Andrew Weiss on June 21, 2006. (R. 28, 166.) She was represented by an attorney, William Gotleib. (R. 168.)

At the hearing, Thomas testified that she is unable to work more than her usual twenty hours per week (R. 177-178) because she is in constant pain. (R. 176-177.) She stated that her symptoms include painful tingling and burning sensations in her fingers and toes, as well as weakness in her back that prevents her from standing for long periods of time. (R. 172.) She also stated that she suffers from bi-lateral herniated discs, nerve damage, and fibromyalgia. (R. 171-172.) In addition to her various physical ailments, she testified that she was being treated by

---

[2] Although the Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings indicates the application filing date as April 23, 2004, the Application for Disability Insurance Benefits is marked as being received on March 29, 2004. For the purposes of these papers, the Court deems March 29, 2004 to be the filing date, noting that the time discrepancy would not alter the Court's analysis.

a psychiatrist for GAD. (R. 174.) At the time of the hearing, plaintiff was taking prescription pain medication daily, along with Seraquel for her GAD. (R. 174-175.) Although her application materials indicate that she did not experience any side effects (R. 86), she stated at the hearing that her medication diminished her ability to focus and concentrate, causing her to feel "fuzzy", to forget things, and to perform tasks more slowly. (R. 177.)

On August 17, 2006, ALJ Weiss issued a Notice of Decision denying plaintiff's claim. (R. 10.) He framed the issue to be determined as "whether the claimant is disabled under sections 216(I) and 223(d) of the Social Security Act." Id. He also noted that "the claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2007." Id. Thus, there was an additional issue regarding whether disability could be established on or before that date. ALJ Weiss applied the evidence in the record to the five step test used to determine whether or not an adult is "disabled" within the meaning of the Act. (R. 12-17.) In so doing, he expressly considered the reports from Dr. Seecoomar, Dr. Sharon, and Dr. Seo, as well as the May 18, 2004 report from Jamaica Hospital Medical Center and the June 7, 2004 MRI's of Thomas' spine. He also expressly considered the reports from psychiatrists Dr. William Gralnick and Dr. Herbert Meadow, the review of the record by Dr. J. Curly, Ph.D., and Thomas' own testimony at the hearing.

ALJ Weiss concluded that Thomas was engaged in substantial gainful employment in 2005 and that she had been engaging in substantial gainful activity for at least two months prior to her hearing. (R. 12-13.) However, he noted that she did not appear to have engaged in substantial gainful employment during the years 2004 and 2006. (Id.) In view of that finding, he went on to consider whether her impairments met or medically equaled the listed impairments,

6

and concluded that they did not. (R. 13.) He then determined that plaintiff had the residual functional capacity to perform "light work" and is able to "lift/ carry ten pounds frequently and twenty pounds occasionally; sit, stand, and walk for six hours in an eight hour workday; and has an unlimited capacity to push/ pull." (R. 13.) After acknowledging that the plaintiff's medical impairments could reasonably result in the alleged symptoms, ALJ Weiss proceeded to note that Thomas' "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 16.) He found this conclusion to be supported by the fact that Thomas continued to work. He therefore determined that she is not disabled and denied her claim for benefits. (R.17.)

On December 22, 2006, the Appeals Council denied plaintiff's request for review. (R. 4-6.) Accordingly, ALJ Weiss' decision became the final decision of the Commissioner regarding plaintiff's application for benefits. Plaintiff timely commenced this action pro se on February 2, 2007.

## II. Discussion

### A. Standard of Review

"In reviewing the Commissioner's denial of benefits, the courts are to uphold the decision unless it is not supported by substantial evidence or is based on an error of law." Melville v. Apfel, 198 F.3d 45, 51-52 (2d Cir. 1999) (citing Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) and Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In making this determination, the reviewing court is to defer to the ALJ's resolutions of conflicting evidence. See Clark v. Comm'r of Social Security, 143 F.3d 115, 118 (2d Cir. 1998) ("In reviewing the denial of SSI benefits, we must determine whether the SSA's decision was supported by substantial evidence and based on the proper legal standard, keeping in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record."). Additionally, the reviewing court is not to engage in an independent analysis of the claim for benefits at issue. See Melville, 198 F.3d at 52 ("It is not the function of the reviewing court to decide *de novo* whether a claimant was disabled ... or to answer in the first instance the inquiries posed by the five step analysis set out in the SSA regulations."). With these standards in mind, the Court will now address the instant claim for benefits.

### B.     Standard for Benefits

In order to qualify for benefits, a claimant first must meet the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b. Then, the claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Furthermore, the impairment must be of such severity that the claimant "is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five step analysis when confronted with an adult disability claim. First, the Commissioner considers whether or not the claimant is currently

engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If not, the Commissioner next considers whether the claimant has a "severe" impairment. Id. at (a)(4)(ii). Third, if the impairment is severe, the Commissioner considers whether or not the claimant has an impairment which meets or medically equals those found in the listings. If so, the claimant is disabled and the inquiry ends. Id. at (a)(4)(iii). Next, if the impairment does not meet or equal the listings, the Commissioner considers whether or not the claimant has the residual functional capacity[3] to do her past relevant work.[4] Id. at (a)(4)(iv). Fifth and finally, if the claimant can not do any past relevant work, the Commissioner determines whether, based on residual functional capacity as well as age, education, and work experience, the claimant could do other work.[5] Id. at (a)(4)(v).

In this case, ALJ Weiss correctly applied this five-step process and expressly considered all of the evidence therein. After concluding that Thomas had not been engaged in substantial gainful activity in 2004 and 2006, the ALJ went on to find that Thomas back disorder, fibromyalgia, and dysthymia were severe impairments under the Act. (R.13.) However, he determined, as described above, that Thomas's impairments were not so severe as to meet or equal the listings requirement and that she had the residual capacity to perform light work. (R. 13-16.)

---

[3] Residual functional capacity is the most one can still do despite their limitations. 20 C.F.R. § 416.945(a)(1).

[4] The claimant bears the burden of proving that she cannot return to her former line of work. Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999).

[5] At the fifth step in the analysis, the burden falls on the commissioner to establish that there is gainful work in the national economy that the claimant could perform. See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) and Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000)).

Additionally, there is substantial evidence in the record to support ALJ Weiss' finding that Thomas' non-physical ailments did not impede her ability to perform a full range of light work. Dr. Gralnick testified that, while he had diagnosed her with GAD, he had not treated her since her alleged onset date of August 20, 2003. (R.120.) Moreover, Dr. Meadows concluded that Thomas' dysthymia and GAD would not interfere with her ability to function. (R.114-15.)

The ALJ's conclusion that Thomas is able to work as an accounts payable clerk is supported by substantial medical records, indicating that Thomas's limitations would not prevent her from working in certain capacities. It is also evidenced by the fact that she was working for twenty hours a week at the time of the hearing. ALJ Weiss addressed each piece of medical evidence in his decision and presented a clear analysis of the facts in this case. Accordingly, the defendant's motion for judgment on the pleadings is granted and ALJ Weiss' decision is affirmed.

## CONCLUSION

For the foregoing reasons, the defendant's motion for judgment on the pleadings is granted and ALJ Weiss' decision is affirmed. The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, NY
      August 5, 2008

                                      Carol Bagley Amon
                                      United States District Judge